UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAIME C. LOPEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02172-TWP-MPB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on a Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Jaime C. Lopez ("Lopez"). For the reasons explained in this Order, the motion is **DENIED** and dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. SECTION 2255 MOTION STANDARDS

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79

(7th Cir. 2013) (citing *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States,* 113 F.3d 704, 705 (7th Cir. 1997)).

## II. FACTUAL AND PROCEDURAL BACKGROUND

In January 2016, Lopez was tried and convicted by a jury of all charges contained in a nineteen-count Revised Indictment, which included fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-15); four counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts 16-19); and one count of securities fraud, in violation of 15 U.S.C. § 78j(b) (Count 20). *United States v. Lopez*, No. 1:15-cr-00069-TWP-DML-1 (S.D. Ind.) (hereinafter "Crim. Dkt."), Dkt. 61.

Between December 2009 and January 2012, Lopez created various business entities on paper which he later utilized to commit the wire fraud, money laundering and securities fraud offenses of which he was convicted. These entities, with names all beginning with Lopez's initials, included JCL Interest Plus, JCL Capital Inc., JCL & Company, Inc. and JCL Direct (the "JCL Entities"). These companies had no employees and were essentially alter egos of Lopez, who conducted all of his business from his house.

The victims of Lopez's fraud scheme were all people that he met personally at his church (Thomas Holsworth) or through family members (Jerry and Colleen Wilson and Danny Cole). The only people who ever invested with Lopez were these four victims and his father-in-law, Stevie Brown. Lopez persuaded the victims to transfer their retirement funds to him for further investment. In soliciting their business, Lopez represented that the funds invested would be used as loans to outside businesses, to purchase corporate bonds or notes, or to invest in real estate. In a letter to Danny Cole, Lopez claimed that JCL Capital was engaged in the business of "small equipment financing to large corporate loans." These investments never occurred.

Beyond the solicitations he made to the investors in personal conversations with them, Lopez provided flyers and used a website, www.jcl-companies.com, to seek their business under false pretenses. For example, flyers for JCL Capital indicated that the company provided real estate lending throughout North America and claimed that other companies "make use of JCL's broad industry expertise" to achieve their financial goals. The flyers further claimed that JCL Capital had "industry-specific expertise in aviation, energy, infrastructure, healthcare, and media." JCL Capital never conducted any such business. The website falsely described the JCL Entities, falsely claiming that its portfolio included such major corporations as Exxon Mobil, Wells Fargo, Visa, American Express and Procter & Gamble.

To execute his scheme, Lopez directed his victims to transfer funds from their Individual Retirement Accounts (IRAs) into self-directed IRAs administered by an independent IRA management company, Entrust IRA, later known as Midland IRA ("Midland"). Lopez advised the investors that, after their retirement funds were transferred to Midland, he would move the funds into one or more of the JCL Entities for further investment. As a further part of the process, the investors executed promissory notes to the JCL Entities, per instructions from Lopez.

At Lopez's direction, once the investor funds had been received by Midland, they were deposited into bank accounts controlled by Lopez in the name of one or more of the JCL Entities or an assumed business name thereunder. In total, the victims invested the following amounts of money with Lopez: (1) Thomas Holsworth, $49,215.20; (2) Jerry Wilson, $140,261.46; (3) Colleen Wilson, $36,351.60; and (4) Danny Cole, $222,963.53. In total, these individuals invested $448,791.79 with Lopez.

Very little of this money was ever invested by Lopez. Beyond a $45,000 investment of Danny Cole's money into an E* Trade account, which was completely lost, Lopez diverted all the

funds for his own use, including $70,574 for his home mortgage payments, $41,208 for personal automobiles, and $45,870 for landscaping of his home. The four money laundering counts of which Lopez was convicted relate to transactions in which he used some of the diverted money to make mortgage and landscaping payments and to purchase two Mercedes-Benz automobiles.

Lopez's conversion of the investment funds for his personal use was accomplished in two basic ways. Much of the money was taken by Lopez simply writing checks for personal expenses on the JCL Entities accounts into which the victims' funds had been transferred by Lopez. The other method was that Lopez transferred invested money into a bank account in the name of 413 Solutions, Inc. and then paid for personal expenses out of that account. 413 Solutions was a business operated by Lopez's wife. However, he wrote every check on the account and managed the bank records. Lopez's victims obtained no ownership interest or any other benefit from his movement of their funds into the 413 Solutions account.

Late in the scheme, Lopez created new promissory notes for each victim with one or more of the JCL Entities. Each of these new notes had less favorable terms for the investor than the original notes, in that the required investment term was longer and the rate of return to be paid was lower. Although these notes appeared to bear the signatures of the investors, they testified that they did not agree to the revised terms and did not sign any documents authorizing the new notes.

Danny Cole testified on both direct and cross examination that, although he did not sign his original promissory note and related documents which were executed in December 2010, he had orally given Lopez approval to sign these documents on his behalf because he trusted Lopez at that time. Cole further testified that he did not sign the later promissory note and related documents dated in July 2011 and did not authorize Lopez in any fashion to sign his name or execute those documents. When Lopez was confronted by Cole regarding Lopez's unauthorized

4

transfer of $122,000 of funds from Cole's Midland account to JCL Capital, based ostensibly on the latter promissory note bearing the forged signature of Cole, Lopez returned that amount plus some interest to Cole in September 2012. Otherwise, none of the investors, including Cole, ever received any money back from Lopez.

On January 22, 2016, a jury found Lopez guilty on all counts charged in the Revised Indictment. Crim. Dkt. 61. On May 19, 2016, Lopez was sentenced to 57 months' imprisonment for each count, to be served concurrently, followed by three years of supervised release. Crim. Dkt. 89.

Lopez appealed his conviction and the Seventh Circuit affirmed his conviction, holding that: (1) the IRS agent's testimony did not fall outside the permissible scope of testimony as a summary witness; (2) the government's references to an infamous operator of a Ponzi scheme during closing argument did not deny Lopez of a fair trial; (3) the district court did not abuse its discretion by prohibiting the Lopez from referring to a certain witness as an "expert;" and (4) although extrinsic evidence of prior inconsistent statements by Cole was admissible, the Court's error in prohibiting extrinsic evidence of the prior inconsistent statement was harmless. *See United States v. Lopez*, 870 F.3d 573 (7th Cir. 2017), rehearing and rehearing en banc denied, 2017 U.S. App. LEXIS 20336 (7th Cir. October 17, 2017).

On July 16, 2018, Lopez filed the pending motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. 1. The United States filed a response. Dkt. 8. Lopez did not file a reply, and the time to do so has passed.

### III. DISCUSSION

Lopez seeks relief pursuant to § 2255 arguing: (1) it was illegal for Danny Cole to provide false statements to federal agencies and investigators and when he later retracted the statements,

5

the Court refused the use of the prior statements for impeachment (grounds one and two), Dkt. 1 at 6-7; (2) his trial counsel provided ineffective assistance of counsel by failing to do pretrial interviews of witnesses and victims to determine the strength of their testimony, Dkt. 1 at 14; (3) his trial counsel provided ineffective assistance of counsel by failing to prepare properly, object effectively, or moving for a mistrial after Danny Cole's testimony changed, Dkt. 1 at 15. In response, the United States argues that his arguments about Cole's testimony are procedurally defaulted and his trial counsel was effective. Dkt. 6.

### A. Cole's "False" Statements

Lopez first argues that it was illegal for Danny Cole to provide false statements to federal agencies and investigators. The United States argues that Lopez's claim is procedurally defaulted.

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013); *Massaro v. United States,* 538 U.S. 500, 504 (2003)). A § 2255 petition is not a substitute for direct appeal. *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). However, constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *Massaro,* 538 U.S. at 504. In order to show cause for a procedural default, the petitioner must demonstrate that some objective factor external to the record impeded his efforts to bring a claim on direct appeal. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner is unable to demonstrate both cause and prejudice, he may be able to obtain habeas review only if he can persuade the court that the dismissal of his petition would result in a fundamental miscarriage of justice – that is, "in an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Lopez's claim that Cole's actions were illegal "could have been raised originally in the trial court and then on direct appeal," but were not. *See Delatorre*, 847 F.3d at 843. Nor has he demonstrated cause and prejudice to overcome the default. Because Lopez's claim should have been brought on direct appeal, and was not, his claim here is procedurally defaulted. Nonetheless, the Court will discuss the merits of his claims below.

**B.      Inability to Impeach Cole's Testimony**

Lopez next argues that the Court erred in refusing to let Lopez introduce extrinsic evidence of Cole's prior inconsistent statements to impeach Cole. The United States argues that Lopez's claim is procedurally defaulted because it was already argued on direct appeal.

The Court agrees that Lopez already raised this issue on appeal, and thus any arguments on this issue are foreclosed by the law of the case. *See Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) ("In the context of § 2255 petitions, the law of the case doctrine dictates that once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.") (internal citations and quotations omitted). The Seventh Circuit considered this exact issue and found that although the Court erred "in denying Lopez's request to call Agent Shivers to highlight the inconsistency," "the district court's error [was] harmless." *Lopez,* 870 F.3d at 582. Thus, relief is not available to Lopez on this ground.

**C.      Ineffective Assistance of Counsel**

Lopez alleges that his trial counsel provided ineffective assistance of counsel by: (1) failing to do pretrial interviews of witnesses and victims to determine the strength of their testimony, and

7

(2) failing to prepare properly, object effectively, or moving for a mistrial after Danny Cole's testimony changed.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances whether counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In addition, in attacking trial counsel's performance, a defendant "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Frentz v. Brown,* 876 F.3d 285, 293 (7th Cir. 2017) (quoting *Strickland,* 466 U.S. at 689).

As an initial matter, Lopez fails to identify "specific acts or omissions of his counsel." *Wyatt*, 574 F.3d at 458. Moreover, each of his claims fails as explained below.

Lopez asserts that his trial counsel failed to conduct pretrial interviews of potential witnesses and victims to confront them about possible discrepancies before trial. Dkt. 1 at 14. Lopez also asserts his trial counsel failed to prepare properly, object effectively, or move for mistrial. *Id.* at 15.

8

A defense attorney has a responsibility to reasonably investigate the circumstances of the case against his client. *See Bruce v. United States*, 256 F.3d 592, 587-89 (7th Cir. 2001). An attorney's trial strategy is "virtually unchallengeable" after counsel has conducted a thorough investigation of his client's case. *Sullivan v. Fairman*, 819 F.3d 1382, 1391 (7th Cir. 1987) (citing *Strickland*, 466 U.S. at 690-91). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation omitted). When counsel's "purported deficiency is based on a failure to investigate, we require the petitioner to allege what the investigation would have produced." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (internal quotation omitted).

Lopez fails to identify any potential witnesses or victims that his counsel failed to interview. Nor does he explain what their testimony or discrepancies would have been. And, except for his claim about discrepancies in Cole's testimony, Lopez fails to explain why he believes his trial counsel did not prepare properly, object effectively, or move for a mistrial. To the extent Lopez refers to Cole's inconsistent testimony, that challenge was already decided by the Seventh Circuit, which found that "the district court's error [relating to discrepancies in Cole's testimony was] harmless." *Lopez,* 870 F.3d at 582. Specifically, the Seventh Circuit noted:

> The inconsistency that Lopez intended to highlight was put on full display for the jury through repeated questions during his [counsel's] cross-examination of Cole, as well as during his [counsel's] closing argument, when [Lopez's counsel] discussed Cole's inconsistencies at length. Additionally, the government's case did not rely on the statements that Cole made to Agent Shivers, nor was the inconsistency in those statements central to Lopez's defense. … The jury was made aware of the inconsistencies in Cole's version of events and was able to weigh his credibility accordingly.

*Id.* at 582. Under these circumstances, Lopez fails to show, under *Strickland*, that he was prejudiced. Accordingly, Lopez has not met his burden to obtain relief.

## IV. CONCLUSION

For the reasons explained in this Order, Lopez is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel. Accordingly, his motion for relief pursuant to § 2255 is **DENIED** and this action is dismissed with prejudice. Judgment consistent with this Entry shall now issue and the Clerk shall **docket a copy of this Entry in No. 1:15-cr-00069-TWP-DML-1.** The motion to vacate (Crim. Dkt. 129) shall also be **terminated** in the underlying criminal action.

## V. CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Lopez has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED.**

Date: 2/12/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAIME C. LOPEZ
12705-028
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

James Marshall Warden
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
james.warden2@usdoj.gov